667 So.2d 480 (1996)
David TOLLEY, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 95-1216.
District Court of Appeal of Florida, Fifth District.
February 2, 1996.
Michael L. Irwin, Orlando, for Appellant.
Patricia A. Savitz, Orlando, for Appellee.
THOMPSON, Judge.
David Tolley ("Tolley"), the biological father of three sons (J.T., B.T. and Jf. T.) appeals the trial court's final order of adjudication and disposition which terminated his parental rights. Although several grounds were written as the basis for the termination, the primary ground cited by the trial court was its finding that Tolley's three sons were at substantial risk of prospective abuse or neglect due to his pedophilia. At trial, Tolley argued that his parental rights could not be terminated because the Department of Health and Rehabilitative Services ("HRS") failed to prove by clear and convincing evidence that the children were at substantial risk of prospective abuse or neglect due to his pedophilia. After reviewing the testimony presented to the trial judge, especially the expert testimony, we affirm the final judgment terminating Tolley's parental rights.
*481 Initially, we note that a child may be found dependent because of prospective abuse. Section 39.01(10), Florida Statutes (1993) reads in pertinent part:
(10) "Child who is found to be dependent" means a child who, pursuant to this chapter, is found by the court:
.....
(e) To be at substantial risk of imminent abuse or neglect by the parent or parents or the custodian."
This allows the court to find a child dependent before the child is actually harmed. See Richmond v. Department of Health & Rehabilitative Servs., 658 So.2d 176 (Fla. 5th DCA 1995) (affirming finding of dependency based on substantial risk of imminent abuse or neglect where expert and lay testimony demonstrated nexus between mother's mental health problems and her potential to harm daughter). Further, parental rights may be terminated because a child is at substantial risk of prospective abuse or neglect. Palmer v. Department of Health & Rehabilitative Servs., 547 So.2d 981 (Fla. 5th DCA), cause dismissed, 553 So.2d 1166 (Fla. 1989) (affirming termination of father's parental rights to son based on prospective sexual abuse where evidence showed that father had been diagnosed as untreated pedophile, his prognosis for improvement was poor, and there was substantial expert testimony that risks were "too high" that father would likewise abuse son).
Recently this court stated:
A child may be declared dependent or parental rights terminated based on the sexual abuse of other children ... where there is some reasonable basis in the evidence that the child is likewise at risk.

Denson v. Department of Health & Rehabilitative Servs., 661 So.2d 934, 936 (Fla. 5th DCA 1995) (emphasis added). Therefore, to justify the termination of parental rights in such cases, "the state must show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child." Padgett v. Department of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla. 1991). Although there was a dispute and disagreement between experts, the state met its burden in this case by showing with expert testimony a nexus between Tolley's pedophilia and the potential harm to his sons.
A report was made to HRS concerning the children and an investigation was begun. HRS filed a dependency petition and the children were adjudicated dependent. During the investigation of the dependency, Tolley admitted to having been sexually active with female children. He admitted to his case worker that he had molested his nieces about ten years previously, that he had molested another young girl, that he watched pornographic movies depicting children, and that he once peeked through a crack in the door to watch his neighbor's child. Tolley felt that his own children were not at risk because they were boys and the other children had been girls. As a result of these revelations, a plan was developed for Tolley in order that the children be returned to him. One part of the plan was that he receive counseling for his sexual predisposition toward children.
Ann McDaniel, a licensed mental health counselor, was accepted as an expert. She testified that Tolley was required to attend the Altamonte Center for Counseling because of the treatment modality they used. She evaluated Tolley and recommended a course of outpatient sex offender treatment, which included group therapy and regular polygraph examinations. This form of treatment modality was recommended because of the high degree of denial among pedophiles. Specifically, group therapy reduced the ability of the individual to manipulate his therapist or to deny his problem. Tolley was accepted into the program but was temporarily discharged because he refused to take a polygraph test. Even when he was accepted back into the program, he did not appear when scheduled to take the polygraph test. Eventually, he was completely discharged from the program. McDaniel testified that without further treatment using the treatment modality she recommended, Tolley remains at a high risk of reoffending.
Dr. Daniel P. Tressler, a clinical and forensic psychologist, was accepted as an expert in the field of clinical psychology with the ability *482 to evaluate and assess parents, in relation to sexual abuse and sexual offenders. Dr. Tressler was Tolley's treating psychiatrist. Dr. Tressler's diagnosis of Tolley was: (1) acute, chronic depression; and (2) "pedophilia, opposite sex, nonexclusive type, based upon admitted instances of sexual behavior in [Tolley's] past at several different stages with children who were prepubescent." Specifically, Tolley admitted to fondling his two-year-old sister when he was only eleven or twelve years old, molesting his nieces (his sister's children) approximately ten to eleven years prior to the evaluation, and molesting the daughter of a friend. Tolley also admitted to having engaged in homosexual as well as heterosexual activities with adults. Based upon this history, Dr. Tressler testified:
That means that [Tolley] had been able, in the course of his life, to demonstrate or to form and maintain heterosexual relationships. So ... his sexual orientation ... is not exclusively with children. In fact [Tolley] has demonstrated a tendency toward developing sexual relationships with a variety of people of a variety of ages of ... both genders depending upon what opportunities have been presented to him at different stages in his life. So he's nonexclusive type. He's not an individual who is only attracted to and able to achieve sexual gratification with children.
Based upon his evaluation and diagnosis, Dr. Tressler recommended a "fairly aggressive course of treatment, particularly group therapy for sexual offenders," as well as behavior modification procedures. Additionally, Dr. Tressler recommended that Tolley continue to have supervised visitation with the children, but he did not recommend that the children be returned to him because he believed Tolley posed potential risk to the children. The doctor opined that the children were at risk because Tolley had demonstrated that he may achieve sexual arousal with either children or adult males and that Tolley "has had difficulty limiting his behavior in either case. Though he may not have had any sexual fantasies or inclinations to molest his three male children, the possibility that he may achieve arousal and act in some fashion as a result of that arousal is significant." Dr. Tressler testified that he could not recommend the return of the children until Tolley "demonstrated substantial progress as judged by the treating professionals." He doubted whether the father could show much progress in one year.
Tolley presented the testimony of Dr. Thomas Guest, a clinical psychologist. After Tolley was discharged from the Altamonte Center for Counseling, he became a patient of Dr. Guest. Dr. Guest testified that Tolley was pedophile, and that he had "a personality disorder characterized by schizoid avoidance and passive/aggressive features." Dr. Guest described his treatment modality which included sexually reconditioning. He had seen Tolley for seven months and felt that he had progressed very well in treatment. During cross-examination Dr. Guest testified that all of his reports on the progress of Tolley came from Tolley and that there was no independent corroboration or group therapy. He felt that Tolley had progressed to the point that his children could be returned.
Dr. Tressler, when called for rebuttal, disputed that Tolley could be helped in such a short period of time and that Dr. Guest's treatment methods were not generally successful with pedophiles because they tended to resist treatment and to be untruthful about their behavior. He noted that most professionals treating pedophiles prefer some kind of external monitoring, such as polygraphs, penal plethsmographs, or biofeedback. He testified that pedophiles needed long-term, perhaps even life-long treatment. For that reason, he believed Tolley's children were at risk of future abuse.
The trier of fact may accept or reject all or any part of an expert's testimony. See Fla.Std.Jury Instr.Crim. 2.04(a); see also Demps v. State, 462 So.2d 1074 (Fla. 1984) (holding that whether a witness is believable is for trier of fact to determine and testimony can be accepted or rejected in whole or in part by trier of fact). In this case, the evidence presented by the HRS, particularly the expert testimony of Dr. Tressler, provided the required evidentiary basis for the trial court's finding that Tolley continued to pose a substantial risk of significant harm to his children. Padgett, 577 So.2d at 571.
*483 This case is distinguishable from similar cases decided by this court because, in those cases, there was no expert testimony connecting the parents' past sexual abuse of other children with the risk of future harm to the parents' own children. Compare, e.g., Denson, 661 So.2d at 936 (reversing finding of dependency based on father's past sexual abuse of one of his children, where there was no evidence or expert testimony regarding father's mental or emotional condition, or likelihood that he would abuse his other children); Fielder v. Department of Health & Rehabilitative Servs., 596 So.2d 520 (Fla. 5th DCA 1992) (holding that father's two children could not be declared dependent based on father's sexual abuse of unrelated minor child in father's care where evidence before trial court was legally insufficient to support finding that father's two children were at risk); Paquin v. Department of Health & Rehabilitative Servs., 561 So.2d 1286 (Fla. 5th DCA 1990) (holding that, although evidence justified finding of dependency as to two older children based on father's past sexual abuse of eight-year-old daughter when in presence of six-year-old son, evidence did not justify finding of dependency as to two-year-old daughter who did not live in same household where no competent evidence was presented that two-year-old had ever been abused, had witnessed any abuse, or might be subjected to abuse in future); see also Hroncich v. Department of Health & Rehabilitative Servs., 20 Fla. L. Weekly D2630, ___ So.2d ___ (Fla. 5th DCA Nov. 28, 1995) (reversing judgment terminating mother's parental rights based in part on finding of prospective neglect where there was no evidence that mother's past conduct, or her current mental condition of schizophrenia, made risk of future harm to daughter likely). Unlike these cases, here there was expert testimony as well as the admissions of Tolley concerning his pedophilia. HRS has met its burden by clear and convincing lay and expert testimony. They have shown a nexus between Tolley's pedophilia and the prospective abuse of his sons. Denson, 661 So.2d at 936.
AFFIRMED.
ANTOON, J., concurs.
DAUKSCH, J., concurs in conclusion only.