704 So.2d 734 (1998)
George EDDY o/b/o A.A.E., A Child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee. /
No. 97-990.
District Court of Appeal of Florida, Fifth District.
January 16, 1998.
*735 Ronald I. Cole, Ocala, for Appellant.
Roberta L. Kline, Florida Department of Children and Families, Ocala, for Appellee.
THOMPSON, Judge.
George Eddy appeals a final order of disposition which adjudicated his minor child, A.A.E., dependent. The court found A.A.E. was in danger of "prospective risk of harm" from Eddy, 26, who had been placed on probation for sexually abusing his nephews when he was 13 to 16 years old. We reverse.
The record establishes that Eddy and Susan White, the child's mother, moved to Ocala from Rhode Island in December of 1995. Because Susan was pregnant, they stayed with Susan's mother, Arleeta Girouard, during the last term of the pregnancy until A.A.E. was born. During the pregnancy, White and Eddy participated in Healthy Start, a voluntary program which provided prenatal instructions and counseling to expectant parents, and postnatal support. They informed their counselor that Eddy had been placed on probation as a sex offender in Rhode Island. The counselor recommended that Eddy participate in individual counseling to address his specific problem. Eddy did not.
After the child was born on 29 May 1996, a counselor was assigned to assess the risk of abuse to the child. The child was placed voluntarily with Ms. Girouard until the initial investigation and assessment could be completed. Eddy and White told the counselor about Eddy's probation for sexually abusing his two nephews for three years in Rhode Island. Eddy was between 13 and 16 years old when the abuse occurred. The counselor required Eddy to maintain a separate residence from White, which Eddy did by returning to the home he and White had set up prior to the child's birth. White returned to live with her mother. The Department of Children and Family Services ("DCF") ordered Eddy not to visit the child unless the visitation was supervised. Because of the involvement of DCF, Eddy has never lived with or been alone with the child.
In September 1996, White moved out of her mother's home because of continuing animosity and moved in with Eddy. The grandmother informed DCF she could no longer care for the child, and DCF petitioned the court to place A.A.E. in shelter care rather than in White's custody. DCF alleged the child was in danger because of Eddy's history of child abuse. The court ordered the child into shelter care.
DCF filed a dependency petition on 1 October 1996 and subsequently, an adjudicatory hearing was held. During the hearing, the court received a report from psychologist Dr. Ted Shaw. Dr. Shaw reported that after evaluating the available material, including a report from Rhode Island and a self-report from Eddy, he "would not consider Mr. Eddy at particular risk to reoffend against a natural female child." Based upon his screening, Dr. Shaw opined he could not recommend that Eddy continue counseling. The court also heard testimony that during supervised visitation, Eddy improperly held the child with his hand between her legs, rubbing the diaper. The behavior stopped once it was reported to the shelter care worker.
Although DCF's petition contained numerous allegations against Eddy and White, the trial court adjudicated the child dependent *736 finding the following allegations had been proven by a preponderance of the evidence: 1) Eddy is a convicted sexual abuser; 2) White knew of Eddy's convictions and had no plan for protecting A.A.E.; 3) both parents failed to avail themselves of the voluntary services recommended by DCF. The court determined that although it was a close question, the DCF sufficiently established "a prospective risk to the child by virtue of Mr. Eddy's admissions regarding his prior sexual prosecution...."
A child may be found dependent if the court finds the child is "at substantial risk of imminent abuse or neglect by the parent or parents or the custodian." § 39.01(11)(f), Fla. Stat. (Supp.1996). Such a finding may be based on proof of neglect or abuse of other children. Denson v. Department of Health and Rehabilitative Servs., 661 So.2d 934 (Fla. 5th DCA 1995). Where there has been sexual abuse of other children, the court may declare a child dependent or terminate parental rights if the evidence shows a substantial risk that the child will suffer similar abuse. Padgett v. Department of Health and Rehabilitative Servs., 577 So.2d 565 (Fla.1991); Tolley v. Department of Health and Rehabilitative Servs., 667 So.2d 480 (Fla. 5th DCA 1996); Denson.
However, prior sexual abuse of other children is insufficient alone to establish a substantial risk of imminent abuse. See Denson (holding evidence that father sexually abused children's half-sibling insufficient to show likelihood of similar abuse to other children); Fielder v. Department of Health and Rehabilitative Services, 596 So.2d 520 (Fla. 5th DCA 1992) (reversing dependency adjudication based solely on evidence that father had sexually abused unrelated child in his care); Fetters v. Department of Health and Rehabilitative Services, 589 So.2d 959 (Fla. 5th DCA 1991) (finding evidence that father had physically abused stepchild legally insufficient to support determination that father's natural child was dependent).
This court has required some independent evidence showing that sexual abuse is likely to recur. Additional evidence such as testimony from a mental health specialist that the parent or custodian suffers from an untreatable problem would provide the nexus between the prior abuse and the allegation of prospective abuse. See Tolley (affirming termination of parental rights where father was a diagnosed pedophile and two experts testified to high risk of recurrence without sex offender treatment); Denson (noting lack of evidence showing likelihood that father would sexually abuse his children); Palmer v. Department of Health and Rehabilitative Servs., 547 So.2d 981 (Fla. 5th DCA) (affirming termination of parental rights where father suffering from untreated pedophilia had no prospect for cure within reasonable time), cause dismissed, 553 So.2d 1166 (Fla.1989). See also, Smith v. Department of Health and Rehabilitative Servs., 665 So.2d 1153 (Fla. 5th DCA 1996) (Sharp, J., dissenting) (to prove prospective abuse, evidence must show abuse or neglect of another child and parent's prognosis for improvement or rehabilitation and high likelihood that parent's condition will result in abuse or neglect of child).
In this case, there is no such nexus. DCF presented no evidence that Eddy was an untreatable pedophile, that he would reoffend, or that it was likely he would harm his daughter. Accordingly, we reverse the dependency adjudication.
REVERSED and REMANDED.
PETERSON and ANTOON, JJ., concur.