770 So.2d 1189 (2000)
In the Interest of M.F. and M.F., etc.
R.F., Petitioner,
v.
Florida Department of Children and Families, Respondent.
No. SC96883.
Supreme Court of Florida.
October 12, 2000.
*1190 Richard C. Reinhart of Reinhart & Moreland, Bradenton, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, and Dyann W. Beaty, Assistant Attorney General, Tampa, Florida, for Respondent.
PER CURIAM.
We have for review In re M.F., 742 So.2d 490 (Fla. 2nd DCA 1999), wherein the district court certified conflict with Denson v. Department of Health & Rehabilitative Services, 661 So.2d 934 (Fla. 5th DCA 1995), and other decisions of the Fifth District Court of Appeal. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

I. FACTS
On May 11, 1998, the Florida Department of Children and Families ("DCF") filed in circuit court a verified shelter petition seeking to remove from L.F. her three natural children, K.F. (age 8), M.F. (age 5), and M.F. (age 3).[1] The circuit court granted the petition and ordered the children placed in the grandparents' care.[2] DCF filed an amended petition for dependency on July 6 alleging that the children had been subjected to abuse and neglect in their home and seeking to have them adjudicated dependent and placed in the temporary legal custody of the grandparents. DCF further alleged that the children were subject to both prospective abuse and neglect because the father, R.F., was a convicted child molester who was currently *1191 imprisoned.[3] Only the father challenged the petition,[4] and he challenged it only as to M.F. and M.F.[5]
At the hearing on the petition, the inquiry focused on DCF's allegation that the children were subject to both prospective abuse (i.e., as evidenced by the father's prior conviction for a child sex offense) and prospective neglect (i.e., as evidenced by the father's lengthy prison term).[6] The court ultimately entered an order adjudicating M.F. and M.F. dependent as to the father. The court found by clear and convincing evidence that R.F. was a convicted child molester (i.e., he had committed an attempted capital sexual battery against K.F.), that R.F. was currently incarcerated for fifteen years, and that R.F. was unable to care for the children:
-The children's father is incarcerated for a conviction of attempted sexual battery by an adult on a victim under the age of twelve.[[7]] This crime was committed upon the child [K.F.]. [R.F.] is serving a fifteen year sentence. He is unable to care for his children.
The court concluded as follows:
-The children [M.F.] and [M.F.] are dependent having been at risk of prospective neglect and prospective abuse if placed in the father's care.
The Second District Court of Appeal focused only on the fact that R.F. had been convicted of a child sex offence and found that this conviction, standing alone, was sufficient to support the trial court's ruling. The court framed the issue narrowly:
[W]e address only the issue of whether evidence of sexual abuse of one child is sufficient evidence of abuse or neglect of a sibling to support an adjudication of dependency.
*1192 In re M.F., 742 So.2d 490, 491 (Fla. 2d DCA 1999). The court noted that conflict on this issue exists between several of the district courts of appeal:
In cases involving sexual abuse, the Third District has found the act of sexual abuse of a child sufficient in itself to establish a substantial likelihood of future abuse and neglect of a sibling. However, the Fifth District has required additional evidence of a likelihood that the parent will similarly abuse the other children.
Id. (citation omitted). The court then concluded:
In this case, the only evidence the Department of Children and Families presented to support an adjudication of dependency as to M.F. and M.F. was a copy of the Father's conviction for sexual abuse of the stepdaughter. We adopt the holding of the Third District that this evidence alone is sufficient to support an adjudication of dependency as to M.F. and M. F.
Id. (emphasis added). The court certified conflict with decisions of the Fifth District on this issue. R.F. contends that the Second and Third Districts are in error. He claims the following: The simple fact that a parent committed a sex act on a child is insufficient by itself to support a final ruling of dependency as to a different child.

II. THE APPLICABLE LAW
In a dependency proceeding, DCF must establish its allegations by "a preponderance of the evidence."[8] A court's final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record.[9] Competent substantial evidence is tantamount to legally sufficient evidence. The Legislature has explained that a prime purpose of the Florida Juvenile Justice Act (the "Act") is to guarantee to each child in Florida a safe and supportive home environment:
39.001 Purposes and intent....
(1) The purposes of this chapter are:
. . . .
(b) To provide for the care, safety, and protection of children in an environment that fosters healthy social, emotional, intellectual, and physical development; to ensure secure and safe custody; and to promote the health and well-being of all children under the state's care.
§ 39.001, Fla. Stat. (1997). Coextensive with this purpose is a second equally important goal: Preservation of the family.
(1) The purposes of this chapter are:
. . . .
(d) To preserve and strengthen the child's family ties whenever possible, removing the child from parental custody only when his or her welfare or the safety and protection of the public cannot be adequately safeguarded without such removal....
§ 39.001, Fla. Stat. (1997). The severing of the parent-child bond-even temporarily-is a refuge of last resort for the child. Even though a child's home may be lacking in amenities, the alternative-i.e., removal of the child-oftentimes is more harmful to the child. The benefits of an abiding family life are weighty and well-documented.
*1193 The purpose of a dependency proceeding is not to punish the offending parent but to protect and care for a child who has been neglected, abandoned, or abused. See § 39.404(2), Fla. Stat. (1997). The Act defines a dependent child as one who inter alia is at risk of imminent abuse or neglect:
(11) "Child who is found to be dependent" means a child who, pursuant to this chapter, is found by the court:
. . . .
(f) To be at substantial risk of imminent abuse or neglect by the parent or parents or the custodian.
§ 39.01, Fla. Stat. (1997) (emphasis added). "Abuse" and "neglect" are defined as follows:
(2) "Abuse" means any willful act that results in any physical, mental, or sexual injury that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired....
. . . .
(36) "Neglect" occurs when the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the person primarily responsible for the child's welfare deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment or permits a child to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.
§ 39.01, Fla. Stat. (1997).
While this Court has not specifically addressed whether a court can issue an order of dependency based on the abuse or neglect of a different child, we have held that a court can enter an order terminating parental rights based on such grounds:
[W]e hold that the permanent termination of a parent's rights in one child under circumstances involving abuse or neglect may serve as grounds for permanently severing the parent's rights in a different child.
Padgett v. Department of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla. 1991) (footnote omitted).[10] Unlike the district court ruling in the present case, our ruling in Padgett was based not on any one particular fact but on extensive and wideranging evidence of abuse and neglect.

III. THE INSTANT CASE
The narrow question posed in the present case is whether a court can base a final ruling of dependency solely on the fact that the parent committed a sex act on a different child. As noted above, the Second District Court of Appeal in the present case recognized conflict between the Third District and the Fifth District on this issue. See In re M.F., 742 So.2d at 491. Whereas the Third District has held that such an act standing alone is sufficient to support a ruling of dependency,[11] the Fifth District has held that some additional proof of risk to the current child is required.[12] In the present case, the Second *1194 District agreed with the Third District and adopted that court's per se rule.
We conclude that the flexible approach taken by the Fifth District, rather than the per se rule adopted by the Second and Third Districts, is more consistent with the plain language of the Act. A simple showing by DCF that a parent committed a sex act on one child does not by itself constitute proof that the parent poses a substantial risk of imminent abuse or neglect to the child's sibling, as required by the statute. See § 39.01(11), Fla. Stat. (1997). While the commission of such an act may be highly relevant, it is not automatically dispositive of the issue of dependency. A court instead should focus on all the circumstances surrounding the petition in each case.[13]
As noted above, the trial court in the present case made the following findings: R.F. had committed an attempted sexual battery on a child; the crime had been committed against K.F.; R.F. is currently serving a fifteen-year sentence; and he is unable to care for the children. While (contrary to the present district court's ruling) a copy of R.F.'s conviction standing alone would be insufficient to support this order of dependency as to M.F. and M.F., the totality of the circumstances surrounding the petition is legally sufficient to support the order. Under existing law, the fact that R.F. will be incarcerated for a substantial portion of the children's years of minority is a weighty factor on its own.[14]

IV. CONCLUSION
We eschew the per se rule adopted by the Second and Third Districts and endorse instead the approach taken by the Fifth District. In the present case, the trial court properly considered a multitude of circumstances relating to the petition for dependency, and its ruling is supported by competent substantial evidence in the *1195 record. The district court, on the other hand, considered only R.F.'s conviction. The district court thus applied the wrong rule of law, as explained herein.[15]
We approve the result in In re M.F., but disapprove the remainder of that opinion.
It is so ordered.
SHAW, HARDING and ANSTEAD, JJ., concur.
PARIENTE, J., concurs in result only with a specially concurring opinion, in which ANSTEAD, J., concurs.
WELLS, C.J., concurs in part and dissents in part with an opinion, in which LEWIS and QUINCE, JJ., concur.
PARIENTE, J., specially concurring.
Although I concur in the result in this case, I write separately to emphasize that our approval of the trial court's order does not depend on the resolution of the certified conflict issue. From the limited record in this case, it appears that the initial shelter petition filed by the Department of Children and Family Services ("the Department") was based upon allegations of ongoing domestic violence and threats by the mother's "paramour" that he would kill the mother and children. The Department thereafter filed an amended petition for dependency that only the father, R.F., challenged. In its amended petition, the Department's allegations of "prospective abuse" or "prospective neglect" as to R.F. were predicated solely on the fact that because R.F. has a fifteen-year prison sentence, he would be "unable to care for his children." As the Department points out in its brief, it was R.F.'s incarcerated status that supported the trial court's finding of dependency. R.F. will not assume custody of his children because, in all likelihood, he will be imprisoned during the duration of the children's minority.
Although the version of the law that applies to this case does not incorporate the concept that a substantial term of incarceration is per se evidence of dependency or termination of parental rights, the Legislature has since enacted into law such a per se rule with regard to the termination of parental rights. See § 39.806(1)(d), Fla. Stat. (1999) (providing that the Department may petition for termination of parental rights on the basis that the parent is incarcerated for a "substantial portion" of the period before the child reaches the age of eighteen).[16] If any per se rule were to be applied to this case, it should be that a finding of dependency based on prospective neglect may be predicated on the fact that the only parent or other guardian who could care for the child is unable to do so because that parent or guardian will be incarcerated for a substantial portion of the child's minority. Cf. In re J.Z., 636 So.2d 726, 727 (Fla. 2d DCA 1993) ("A determination of dependency may be based on prospective neglect where, as here, the parent cannot provide care of the child in the future.").
As for the conflict issue, I am compelled to agree that a conviction for the offense of attempted sexual battery on a minor by an adult is insufficient in itself to establish that the adult's other children should be adjudicated dependent.[17] A court may find that a child who has not actually "been abandoned, abused, or neglected by the child's parents" is nonetheless dependent if that child is "at substantial risk of imminent abuse or neglect by the parent or parents or legal custodian." § 39.01(11)(a), (f), Fla. Stat. (1997). In this case, there is nothing in the record as *1196 to the nature or circumstances of the crime for which R.F. was convicted. Likewise, there is nothing in the record that shows how in this case, the fact that R.F. has been convicted of attempted sexual battery of one child puts his children, M.F. and M.F., at substantial risk of sexual abuse from R.F., especially because he is incarcerated and serving a fifteen-year prison sentence. Given this lack of evidence, I agree with the majority's conclusion that although "the commission of such an act may be highly relevant, it is not automatically dispositive of the issue of dependency. A court instead should focus on all the circumstances surrounding the petition in each case." Majority op. at 10-11. Indeed, although it occurred in a termination of parental rights proceeding, this Court has previously explained that it is the totality of the circumstances that must be evaluated in determining the likelihood of prospective abuse of a child based on the past abuse of another child. See Padgett v. Department of Health & Rehab. Servs., 577 So.2d 565, 570-71 (Fla.1991).
I also find it significant that our Legislature has not specifically provided a per se rule that a conviction for a sexual offense against another child shall constitute grounds for an adjudication of dependency or the termination of parental rights. Cf. § 39.464(1)(d), Fla. Stat. (1997) (providing that grounds for termination of parental rights exist when the parent engages in egregious conduct that threatens the life of the child's sibling or results in the sibling's serious bodily injury or death). Moreover, a per se rule where the only evidence is a conviction for a sexual offense involving the child's sibling may raise due process concerns, at least in cases where parental rights are being terminated. Thus, instead of a per se rule, I would suggest the adoption by this Court of a rebuttable presumption of dependency when a parent is convicted of sexual abuse of a minor. This presumption would shift the burden to the parent to present evidence as to why a conviction for the prior sexual abuse of one child would not place the parent's other children at substantial risk for abuse or neglect.
ANSTEAD, J., concurs.
WELLS, C.J., concurring in part and dissenting in part.
I concur in the result in this case.
I dissent from the decision to disapprove the opinion of the Second District.
LEWIS and QUINCE, JJ., concur.
NOTES
[1] The petition alleged the following: The children are in immediate danger because L.F. has failed to protect them from a batterer, i.e., her paramour; her paramour was arrested May 3 for beating L.F. and battering the three-year-old; her paramour made verbal threats to kill L.F. and the children as he was being arrested; L.F. has refused several times to seek a protective order; she has since moved in with the paramour's family; the paramour has a record of prior arrests for aggravated assault, battery, and theft, and is now incarcerated; the children-for their own safety-should be placed in the custody of the maternal grandparents.
[2] The court based its decision on the following reasons:

-To protect the children.
-To provide an opportunity for the children and the family to agree upon conditions for the children's safe return to the home.
[3] In its amended petition, DCF made the following allegation in paragraph 4(l) under the caption "Abuse/Prospective Abuse Neglect/Prospective Neglect":

The children's father is incarcerated for a conviction of attempted sexual battery by an adult on a victim under the age of twelve (12). This crime was committed upon the child [K.F.]. [R.F.] is serving a fifteen (15) year sentence. He is unable to care for his children.
[4] During the pendency of the petition, the mother left Florida with the paramour and she is not now involved in the present proceeding. (The father in the present proceeding is not the paramour.)
[5] R.F. is the natural father of both M.F. and M.F. but not K.F.
[6] At the commencement of the hearing, the attorney for DCF stated that the Department was relying solely on a copy of the father's prior conviction for a child sex offense:

Your Honor, this case is quite simple. We're going to dismiss the allegation of paragraph three, that the father had not provided care and support for the children. What we are bringing today is the petition based on paragraph four L, which is on page three of the amended petition, alone. It reads, the father is incarcerated with a conviction of attempted sexual battery [by] an adult on the victim under the age of 12. This crime was committed upon the child, [K.F.]. [R.F.] is serving a 15 year sentence. He is unable to care for his children.
We have already filed certified copies of that conviction with the court along with a notice of intent to take judicial notice. It will be the only evidence presented in this case this afternoon.
That being the matter, the Department would rest.
The father then contested the admissibility of the conviction and argued that the victim in the prior offense, K.F., was not his biological daughter. The court concluded that the certified copy of the conviction, standing alone, was sufficient to establish dependency:
The judgment of Judge Dubensky on March 23, 1998, a certified copy having been filed is, of itself, sufficient to support the allegation in paragraph four L, and four L having been established is sufficient to support the claim for dependency, that is, the conviction being there, that is certainly sufficient to establish dependency of these two kids as to you.
So, having preserved your objections and overruled them, I will adjudicate you-excuse me. I will find that the petition has been established.
[7] The information alleged that at some time between June 1995 and September 1996 R.F. "with his sexual organ penetrated or had union with the vagina of K.F." He was adjudicated guilty and sentenced in March 1998.
[8] See Fla. R. Juv. P. 8.330(a). Alternatively, DCF may establish its allegations by clear and convincing evidence if it seeks to avoid a repetitive hearing on the same evidence in a subsequent proceeding to terminate parental rights. See id.
[9] Cf. Banks v. State, 732 So.2d 1065, 1067 (Fla.1999) ("This ... is a mixed question of law and fact and will be sustained on review if the court applied the right rule of law and if competent substantial evidence supports its ruling."); In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995) ("Our review of the record shows substantial competent evidence to support the trial judge's finding ... that G.W.B. abandoned Baby E.A.W.").
[10] The Third District Court of Appeal has expanded the holding in Padgett to embrace dependency. See, e.g., In re M.F.G., 723 So.2d 290, 292 (Fla. 3rd DCA 1998) ("We also find sufficient, competent evidence to support the court's determination that D.H.G.'s daughter was at risk of prospective harm and that it was in her best interest to be adjudicated dependent."); E.B. v. Department of Children & Family Servs., 733 So.2d 1145, 1146 (Fla. 3rd DCA 1999) ("The trial court's finding of dependency as to T.W. was sufficient to find the other children in the home, including D.W., dependent.").
[11] See, e.g., E.B. v. Department of Children & Family Servs., 733 So.2d 1145 (Fla. 3rd DCA 1999) (upholding dependency of five stepchildren based on father's sexual abuse of one of them-with no further showing of risk to the others).
[12] See, e.g., Eddy v. Department of Children & Family Servs., 704 So.2d 734 (Fla. 5th DCA 1998) (reversing dependency of natural daughter where father had been placed on probation years earlier for abusing two nephews when father was thirteen to sixteen years old-with no further showing of risk to the present daughter); Denson v. Department of Health & Rehabilitative Servs., 661 So.2d 934 (Fla. 5th DCA 1995) (reversing dependency of three natural and stepchildren where father had sexually abused a different natural child years earlier-with no further showing of risk to current children); Fielder v. Department of Health & Rehabilitative Servs., 596 So.2d 520 (Fla. 5th DCA 1992) (reversing dependency of two natural children where father had sexually abused an unrelated child-with no further showing of risk to current children); Fetters v. Department of Health & Rehabilitative Servs., 589 So.2d 959 (Fla. 5th DCA 1991) (reversing dependency of natural child where father had sexually abused a stepchild-with no further showing of risk to current child); Paquin v. Department of Health & Rehabilitative Servs., 561 So.2d 1286 (Fla. 5th DCA 1990) (affirming dependency of two natural children where father had abused one in the presence of other, and reversing dependency of third natural child where no proof of abuse of that child had been presented); see also Tolley v. Department of Health & Rehabilitative Servs., 667 So.2d 480 (Fla. 5th DCA 1996) (affirming termination of parental rights as to three natural sons where father was admitted pedophile who had abused female children-with expert testimony showing risk to current children); Palmer v. Department of Health & Rehabilitative Servs., 547 So.2d 981 (Fla. 5th DCA 1989) (affirming termination of parental rights as to natural son where father had sexually abused another son and was a diagnosed pedophile-with further showing of risk to current child).
[13] For instance, in cases involving a parent's prior sexual act on a different child, a court may consider the following: Any similarity between the prior act and the pending case; the temporal proximity of the prior act to the pending case; any treatment received by the parent following the act; and the testimony (if appropriate) of professionals and experts.
[14] See, e.g., Yem v. State Dept.of Health & Rehabilitative Servs., 462 So.2d 1147, 1149 (Fla. 3rd DCA 1984) ("[W]e hold that the record supports the trial court's finding that the mother, by her act of murdering her stepson resulting in extended incarceration, permitted her child to live in an environment which caused the child's physical, mental or emotional health to be significantly impaired or in danger of being significantly impaired."). Cf. § 39.464(1), Fla. Stat. (1997) (providing that parental rights may be terminated in certain cases where a parent's incarceration will last for a substantial portion of the child's years of minority); In re J.Z., 636 So.2d 726, 727 (Fla. 2d DCA 1993) ("A determination of dependency may be based on prospective neglect where, as here, the parent cannot provide care of the child in the future.").
[15] We decline to address the other issues raised by R.F. since they were not the basis for our discretionary review in this case.
[16] Even before section 39.806(1)(d) went into effect, we held that "incarceration does not, as a matter of law, constitute abandonment," but that it is "a factor to be considered in determining whether abandonment has occurred." W.T.J. v. E.W.R., 721 So.2d 723, 725 (Fla.1998).
[17] R.F. had entered a plea of no contest to this crime.