826 So.2d 445 (2002)
M.N., Mother of A.P., A Child, and K.P., Father of A.P., A Child, Appellants,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
Nos. 5D01-3663, 5D01-3814.
District Court of Appeal of Florida, Fifth District.
August 30, 2002.
Ryan Thomas Truskoski of Ryan Thomas Truskoski, P.A., Orlando, for Appellants.
Charles D. Peters, Orlando, for Appellee.
SAWAYA, J.
K.P. (father) and M.N. (mother), the parents of the infant A.P., appeal the order finding A.P. dependent. We reverse.

*446 Factual Background
K.P. and M.N. are not married. M.N. has another child, N.N. However, K.P. is not the father of N.N. The dependency proceedings instituted by the Department of Children and Families (DCF) involving A.P. are based on an alleged incident of physical abuse of then three-year-old N.N. by K.P. At the time, K.P. gave differing versions of how N.N. came to be bruised across the face and buttocks while solely in his care. Although K.P. was charged with the child abuse of N.N., we find nothing in the record to indicate that K.P. was ever prosecuted on that charge.
The mother consented to the dependency of N.N., but nevertheless continued to maintain, even during the proceedings involving A.P., that the incident involving N.N. was an isolated one. Because of the dependency of N.N., the mother was ordered to undergo counseling for failing to protect her child and to enlighten her as to her co-dependency. She completed parenting skills classes and took a co-dependency class; however, she was of the opinion that the co-dependency class was irrelevant to her situation.
In the dependency proceedings regarding A.P., the mother testified that she consented to the dependency of N.N. to show that she was a good parent and would do exactly what she was instructed by the case plans. She testified that she wants to maintain a relationship with K.P. and believes that the incident involving N.N. would never happen again. She denied being abused by K.P., whom she described as being very involved with the care of A.P. K.P. supported both A.P. and N.N. financially and voluntarily participated in the case plan for N.N.
K.P. testified that he struck N.N. out of frustration because he had had a bad day at work, traffic was bad, and N.N.'s behavior provoked him. Although K.P. admitted that he struck N.N. on the bottom, he denied pushing N.N. or striking him and causing him to fall down the steps. He stated that it was an accident that N.N. had fallen down the stairs and that he did not intend that N.N. would be injured. K.P. testified that his prior statement to the police that he slapped N.N. on the buttocks and face and pushed him causing him to fall down the stairs was the result of pressure by the police. The record in the instant case does not contain a diagnosis of the severity of N.N.'s injuries because the injuries apparently did not require medical attention.[1] Regarding A.P., K.P. testified that he had cared for A.P. from the date of birth until A.P. was taken by DCF. He testified that he regularly visits A.P. in shelter care and financially supports him.
Testimony was provided by a psychologist who concluded that the mother was in denial and that she used denial as a defense mechanism to help her cope with unpleasant events. Although the mother was committed to preserving the family unit, the psychologist testified that her continued relationship with K.P. could be *447 potentially harmful to the children. As to his evaluation of K.P., the psychologist testified that K.P. had below average intelligence which leads to low frustration tolerance, depression and anxiety which is consistent with an adjustment disorder. However, the psychologist testified that the adjustment disorder was not serious or disturbing.
The issue we must resolve is whether DCF established that the parents pose a substantial risk of imminent abuse, abandonment, or neglect to A.P. based on the previous incident of abuse to N.N. To resolve this issue, we will discuss the applicable standard of review, the law relating to prospective abuse or neglect, our legal analysis, and our conclusion.

Standard of Review
If DCF seeks to have a child declared dependent, it must establish its allegations of dependency by "a `preponderance of the evidence.'" In re M.F., 770 So.2d 1189, 1192 (Fla.2000) (quoting Fla. R. Juv. P. 8.330(a)). In order to establish dependency based on prospective abuse or neglect in cases where another child was previously harmed, DCF has the burden of establishing that the current child is at "substantial risk of imminent abuse, abandonment, or neglect by the parent or parents...." § 39.01(14)(f), Fla. Stat. (2001); Eddy v. Department of Children & Family Servs., 704 So.2d 734 (Fla. 5th DCA 1998).
A trial court's decision that a child is dependent constitutes a mixed question of law and fact. M.F., 770 So.2d at 1192 (citing Banks v. State, 732 So.2d 1065, 1067 (Fla.1999); In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla. 1995)). Hence a ruling that a child is dependent will be upheld if the trial court applied the correct law and the record shows that the decision is supported by competent substantial evidence. Id. "Competent substantial evidence is tantamount to legally sufficient evidence." Id. Because the standard of review is whether competent substantial evidence supports the trial court's determination that a child is at substantial risk of imminent abuse, abandonment, or neglect, appellate courts will not substitute their judgment for that of the trial court by reweighing the evidence or determining the credibility of the witnesses. See F.R. v. Department of Children & Families, 763 So.2d at 478 (Fla. 5th DCA 2000).
Having determined the applicable standard of review, we will discuss next the law relating to prospective abuse or neglect.

The Law Relating To Prospective Abuse Or Neglect
The law defines a dependent child as one who, inter alia, is "at substantial risk of imminent abuse or neglect by the parent or parents or the custodian." § 39.01(14)(f), Fla. Stat. (2001). Dependency may be adjudicated even in the absence of the abuse, abandonment, or neglect of the child at issue; a finding of dependency of a child may be based on proof of neglect or abuse of other children. Denson v. Department of Health & Rehabilitative Servs., 661 So.2d 934 (Fla. 5th DCA 1995). Specifically, this court has held that "a finding of neglect may be based upon proof of neglect or abuse of a sibling." F.R., 763 So.2d at 479 (footnote omitted) (citing Padgett v. Department of Health & Rehabilitative Servs., 577 So.2d 565 (Fla.1991); C.F. v. Department of Health & Rehabilitative Servs., 649 So.2d 295 (Fla. 1st DCA 1995); In the Interest of M.T.T., 613 So.2d 575 (Fla. 1st DCA 1993)).
However, an incident of prior abuse or neglect of one child is insufficient by itself to establish a substantial risk of imminent *448 abuse to another child. M.F. In M.F., the court eschewed a per se rule that would allow a finding of dependency based solely on a father's conviction for sexual battery on one child and adopted the more flexible approach established in a line of decisions from this court which requires additional proof of risk to the current child. M.F., 770 So.2d at 1193 n. 12, 1194 (citing Eddy; Tolley v. Department of Health & Rehabilitative Servs., 667 So.2d 480 (Fla. 5th DCA 1996); Denson; Fielder v. Department of Health & Rehabilitative Servs., 596 So.2d 520 (Fla. 5th DCA 1992); Fetters v. Department of Health & Rehabilitative Servs., 589 So.2d 959 (Fla. 5th DCA 1991); Paquin v. Department of Health & Rehabilitative Servs., 561 So.2d 1286 (Fla. 5th DCA 1990); Palmer v. Department of Health & Rehabilitative Servs., 547 So.2d 981 (Fla. 5th DCA 1989)). What these and other decisions require is introduction of independent evidence that establishes a nexus between the prior abuse and the allegation of prospective abuse. See K.C. v. Department of Children & Families, 800 So.2d 676 (Fla. 5th DCA 2001); Gaines v. Department of Children & Families, 711 So.2d 190, 194 (Fla. 5th DCA 1998) ("Based upon this record, we also reverse the finding of his dependency, since the sole basis was prospective abuse. There was no nexus between the prior abuse of L.K.'s brothers and the allegation of prospective abuse against L.K.") (citations omitted); see also O.S. v. Department of Children & Families, 821 So.2d 1145 (Fla. 4th DCA 2002); D.H. v. Department of Children & Families, 769 So.2d 424 (Fla. 4th DCA 2000).
Regarding the nexus requirement, many decisions focus on a mental or emotional condition of the parent which will continue, such as mental illness, drug addiction, or pedophilia. In Denson, for example, the court held that in order to establish the required nexus and prove prospective abuse or neglect, the evidence
must establish that the child is at `substantial risk' of suffering imminent abuse or neglect if left in the custody of the parent. This showing has generally been based on evidence that the abusive or neglectful parent suffers from a condition that makes the prospect of future abuse or neglect of another child highly probable.
Denson, 661 So.2d at 935 (citing Richmond v. Department of Health & Rehabilitative Servs., 658 So.2d 176 (Fla. 5th DCA 1995); Palmer); see also K.C. In Eddy, the court stated that "[a]dditional evidence such as testimony from a mental health specialist that the parent or custodian suffers from an untreatable problem would provide the nexus between the prior abuse and the allegation of prospective abuse." Eddy, 704 So.2d at 736 (citations omitted).
We will next analyze the application of the law to the facts of the instant case.

Legal Analysis Of The Instant Case
Here there is no evidence that K.P. suffers from a mental illness. The psychologist diagnosed K.P. as having a below average intellectual ability that resulted in an adjustment disorder that is not serious or disturbing. Based on the evidence and testimony in the record before us relating to K.P.'s mental status, we do not believe that K.P.'s mental condition "makes the prospect of future abuse or neglect of another child highly probable." Denson, 661 So.2d at 935. Hence, we do not consider K.P.'s intellectual deficiency to be a sufficient nexus between any prior abuse and the likelihood of prospective abuse.
DCF argues that the evidence and testimony relating to M.N. reveal that she is in a state of denial as to the potential harm posed by K.P. to her children and that she, because of her affection for him and her *449 desire to remain with him, has not taken and will not take appropriate measures to protect her children. Therefore, DCF argues that her mental condition poses a likelihood of future abuse or neglect of A.P. M.N. contends that she has not been proven wrong in her steadfast belief that the incident involving N.N. was isolated. She further contends that her diagnosis of failing to protect N.N. was based on the faulty conclusion that she even had an opportunity to do so because she was not home when the incident occurred.[2] Based on the facts and circumstances of the instant case, we do not believe that M.N.'s mental condition, if it can be called that, is the sort of condition that renders the prospect of future abuse or neglect to A.P. highly probable.

Conclusion
We conclude that DCF has failed to meet its burden of establishing a sufficient nexus between the prior abuse of N.N. and the prospective abuse or neglect of A.P. Specifically, the record does not contain substantial competent evidence that establishes a substantial risk of imminent abuse, abandonment, or neglect of A.P. based on the prior abuse of N.N. by K.P. Accordingly, we reverse the order of dependency relating to A.P.
REVERSED.
THOMPSON, C.J., and SHARP, W., J., concur.
NOTES
[1] The trial judge in the instant case was also the trial judge in the N.N. dependency case. Although the trial judge found that N.N.'s injuries consisted of significant bruising and abrasions on the face and buttocks, that finding was based on the trial judge's memory of the proceedings involving N.N. and not on medical evidence introduced in the proceedings involving A.P. The DCF investigative report of the incident involving N.N., included in the record in the instant case, recites only that N.N. had bruising under his eyes, on his face, and on his buttocks. Because the mother consented to N.N.'s dependency, there was never a fact-finding determination whether the level of abuse was significant enough to support a finding of dependency. Therefore, there was no competent evidence introduced at A.P.'s trial regarding the level of N.N.'s injuries.
[2] We note parenthetically that since there is a lack of evidence in the record in the instant case of the severity of N.N.'s injury, apparently because the injuries were not so severe as to require medical attention, we cannot discern from the record whether dependency would have been warranted had M.N. not consented to the dependency of N.N.