658 So.2d 176 (1995)
Kimberly RICHMOND, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 94-2848.
District Court of Appeal of Florida, Fifth District.
July 28, 1995.
Howard M. Cullimore, Cocoa, for appellant.
*177 Cindy M. Rothfeld, Cocoa, for appellee.
THOMPSON, Judge.
Kimberly Richmond ("the mother") timely appeals the trial court's order of disposition which adjudicated her child, A.R., dependent. The trial court found that A.R. was at substantial risk of imminent abuse or neglect if she was returned to the mother because of the mother's mental health problems. The mother argues that the court's finding of prospective abuse cannot support the adjudication of dependency in light of the trial court's finding that the mother had not abused, neglected, or abandoned A.R. in the past. We affirm.
The Department of Health and Rehabilitative Services ("HRS") filed a petition for dependency on behalf of A.R. because of the mother's bizarre and aberrant behavior. The petition alleged, among other things, that the mother suffered from severe mental health problems. During an adjudicatory hearing, the trial court heard testimony that the mother said she was being followed by the CIA, which was attempting to murder her through space technology, i.e., satellites with lasers. When HRS and the Titusville Police Department investigated allegations of dependency in the mother's home, she said that she was a victim of the Ku Klux Klan, the Rosewood Massacre, and HRS terrorists. She also complained of being under surveillance and about the room being bugged. For these reasons, the mother said that she kept a handgun in the home, which an officer found loaded near where A.R. had been sitting. The mother also said that the handgun was for the HRS worker.
The trial court heard additional testimony from the mother's family, HRS workers, and a psychologist, all of whom verified the mother's bizarre ideation. The psychologist testified that the mother was suffering "from psychotic thought processes involving disorganized thoughts, delusions and paranoia." The psychologist also said that the mother's paranoia and delusional processes would "impact her judgment, her ability to make good decisions for the safety of herself and [A.R.]; [sic] her ability to take care of practical daily caretaking tasks, [and] her perception of what sort of medical treatment is needed." The psychologist recommended a psychiatric evaluation and therapy for the mother. The family members testified that the mother often did not properly feed A.R. and that the mother had not provided proper medical care for A.R. when she was ill. When HRS removed her from the mother's home, A.R. had salmonella and was suffering from diarrhea and fever. There was also testimony that the mother thought A.R. suffered from the same medical condition she did and that she confused A.R.'s medical records with her own.
On appeal, the mother argues that a finding of prospective abuse is not a basis for an adjudication of dependency without evidence of past abuse or neglect. We disagree.
A child may be found to be dependent under several circumstances. §§ 39.01(10) (a)-(e), Fla. Stat. (1993). Two of these circumstances include a child who is found:
(a) To have been abandoned, abused, or neglected by [the] parents or other custodians.
....
(e) To be at substantial risk of imminent abuse or neglect by the parent or parents or the custodian.
§ 39.01(10), Fla. Stat. (1993). A child, therefore, may be found to be dependent based upon a finding of substantial risk of imminent abuse or neglect.
Although there was insufficient proof in this case to establish that the mother had abused, abandoned, or neglected A.R. in the past, HRS proved by a preponderance of the evidence that the mother would abuse or neglect A.R. if she was returned to the mother's custody. The testimony at the adjudicatory hearing demonstrated a nexus between the mother's mental health problems and her potential to harm A.R. The mother had difficulty separating fact from fiction, and her paranoia led her to do things that endangered A.R., including leaving a loaded handgun near A.R. and confusing her medical ailments and treatment with A.R.'s.
*178 The trial court was not required to wait for A.R. to be abused or neglected before adjudicating A.R. dependent. See Palmer v. Department of Health & Rehabilitative Servs., 547 So.2d 981 (Fla. 5th DCA) (affirming termination of parental rights based on finding of prospective sexual abuse where father suffered from untreated pedophilia with no prospect for cure within reasonable time), cause dismissed, 553 So.2d 1166 (Fla. 1989); In re J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982) (upholding termination based on evidence of future neglect and abuse where clinical psychologist testified that, if child were left alone with mother, child would be subject to considerable risk of abuse because of mother's inability to think in terms of child's welfare); cf. In re T.D., 537 So.2d 173 (Fla. 1st DCA 1989) (holding that mother's chronic mental illness which was beyond her control was not sufficient basis upon which to predicate necessary finding of prospective neglect in termination case); In re I.T., 532 So.2d 1085 (Fla. 3d DCA 1988) (reversing dependency adjudication where evidence failed to show sufficient nexus between parents' psychiatric histories and likelihood that either parent would substantially impair child's physical, mental, or emotional health; speculation that parents might exercise poor judgment under stress was insufficient). Accordingly, the trial court's order of disposition adjudicating A.R. dependent is affirmed.
AFFIRMED.
DAUKSCH and W. SHARP, JJ., concur.