BROWNING, J.
E.M.A. (Appellant), who is the 30-year-old father of two minor children, appeals a final order finding the children dependent, withholding an adjudication of dependency, and ordering the children (who formerly lived with Appellant) to remain in the temporary physical care and custody of their paternal grandparents and maternal grandmother pending further order of the court.[1] We have jurisdiction. K.S. v. Dep’t of Children & Families, 760 So.2d 1068 (Fla. 5th DCA 2000); Fla.R.App.P. 9.146(b). Appellant contends that the finding of dependency does not meet statutory requirements and that the evidence is insufficient to support a finding of dependency. We affirm the finding of dependency and instruct the trial court, on remand, to revise its written order to adjudicate dependency pursuant to section 39.507(5), Florida Statutes (1999).
Department filed a petition for dependency in September 1997 alleging 1) that Appellant’s two children (a daughter, then 2-1/2 years old; a son, then 1-1/2 years old) were in Appellant’s care when the dependency status occurred; 2) that Department received an August 8, 1997, report stating that Appellant had exhibited “bizarre behavior” for the past three months, including calling himself “God” and signing his name “God”; 3) that when Department tried to assess Appellant’s emotional and mental state and the children’s safety, Appellant forced Department’s representative to leave Appellant’s property, necessitating assistance by law enforcement; 4) that after Department filed an order to take the children into custody, Sergeant Cox (of the Escambia County Sheriffs Department) went to the residence, and indicated that his office had responded to Appellant’s home on several occasions and Appellant always appeared to have emotional and mental problems; 5) that Appellant’s father stated that he had initiated Appellant’s commitment under the “Baker Act” in February 1996 for mental-health problems; 6) that since the September 9, 1997, shelter hearing, Appellant had been in continuous contact wiih Department and had made threats; 7) that Appellant was arrested for trespassing at the Juvenile Justice Center; 8) that voluntary protective services were not offered to the family because the children’s safety could not be assured; and 9) that the above allegations placed the children at significant risk of abuse, neglect, or threatened harm. A series of adjudicatory hear *185 ings occurred from March 1999 to June 1999. § 39.507, Fla. Stat. (1999).
Proof of abuse, neglect, or abandonment sufficient to demonstrate a state of dependency must be shown by a preponderance of the evidence. § 39.507(1)(b), Fla. Stat. (1999); I.T. v. Dep’t of Health & Rehabilitative Services, 532 So.2d 1085, 1087 (Fla. 3d DCA 1988). To support its finding of dependency, the trial court found in its written orders that a preponderance of the evidence demonstrates a substantial risk of “prospective mental neglect” or “prospective abuse” of the children based on Appellant’s mental-health condition. Appellant contends that the lower court misconstrued the findings required under section 39.01(14)(f), Florida Statutes (1999), and that the evidence does not support a finding of dependency.
The pertinent statute defines a “[c]hild who is found to be dependent” as, inter alia, one who is found by the court “[t]o be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians.” § 39.01(14)(f), Fla. Stat. (emphasis added). Appellant acknowledges that even without any actual prior abuse, abandonment, or neglect, the court can find dependency if the “imminence” requirement is met. Denson v. Dep’t of Health & Rehabilitative Services, 661 So.2d 934, 935 (Fla. 5th DCA 1995); Richmond v. Dep’t of Health & Rehabilitative Services, 658 So.2d 176, 177 (Fla. 5th DCA 1995). The statutory definitions of “abuse” and “neglect” do not expressly include this requirement of imminence. § 39.01(2) & (46), Florida Statutes (1999).[2] However, when these definitions are read in pari materia with the related language in section 39.01(14)©, a risk of imminent abuse or imminent neglect seems to be required to establish that a child is “dependent” as a matter of law. At the conclusion of the adjudicatory hearings, the trial court orally found that Appellant suffers from a mental-health condition classified as either a schizo-affective disorder with manic features or bipolar disorder that, under the circumstances, will require long-lasting mental-health in *186 tervention. Significantly, the court also found that because the children are at risk of “imminent danger” of mental abuse or neglect as those terms are defined in Chapter 39, Florida Statutes, Department’s petition for dependency should be granted. These findings indicate the trial court’s awareness of the statutory threshold for a finding of dependency. To the extent, if any, that the risk of “prospective” abuse or neglect fails to satisfy the statutory reference to “imminent” abuse or neglect,[3] we affirm the order on the grounds that the oral pronouncement is legally sufficient, and the evidence adduced amply demonstrates a nexus between Appellant’s severe mental-health disorder and the substantial risk of danger to his children during the next inevitable manic episode, which could occur within a year or a month or even a week.
In reviewing the challenged order finding dependency, we are not conducting a de novo review of the evidence, nor may we substitute our judgment for that of the trial court. M.J.S. v. Dep’t of Children & Family Services, 764 So.2d 825, 826 (Fla. 2d DCA 2000). Rather, we shall uphold the trial court’s order “[i]f, upon the pleadings and evidence before the trial court, there is any theory or principle of law which would support the trial court’s judgment.” In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995); D.J.W., 764 So.2d at 826; Interest of D.J.S., 563 So.2d 655, 662 (Fla. 1st DCA 1990) (on reh’g en banc). The record supports the lower court’s findings.
The expert testimony and medical documentary evidence demonstrates consistently that Appellant suffers from a mental condition — bipolar disorder — that manifests itself in periodic manic depressive episodes. Like many others with this disorder, Appellant often fails to acknowledge having the condition or understand the nature of his disorder. Typically, patients like Appellant who respond positively to medication and treatment in the short term will incorrectly consider themselves “cured,” will stop taking or will reduce their dosage of the prescribed medications, and will skip medical appointments. There is no way to predict exactly when a person is going to experience another manic phase, although certain factors can play a significant role in triggering an episode and increasing its duration and severity: stresses, non-compliance with medication regimens, use of illicit substances or even certain legal substances, lack of sleep, and inappropriate dietary habits.
One of Appellant’s treating psychiatrists, Dr. Simpalli, testified that Appellant exhibited typical traits of bipolar disorder such as defensiveness, anger, fearlessness, denial of the disorder, vacillation between compliance and noncompliance, noncooperation, risk-taking behavior, rapid and pressured speech, and delusions of grandeur and grandiosity. He further opined that these traits are exacerbated by Appellant’s failure to take his medication regularly, all of which create the “possibility” of harm to the children, but he could not specify beyond a psychiatric “possibility.”
*187 Other expert testimony was adduced that Appellant’s episodes will continue to worsen, and that Appellant would be “at high risk for causing harm to his children either directly or indirect [sic].” Psychiatrist Dr. Barnette testified that during treatment, Appellant initiated questions about the Government’s alleged lying to him about Antarctica. Appellant’s conversations often are rambling and indicative of delusional thinking. In November 1997, Appellant told the doctor that he had been taking his medicine, but sometimes Appellant meant that God was his medicine and that he really was taking fewer pills than the prescribed amount. Decompensation is inevitable if Appellant does not take his medications or is under stress, and he should be monitored on an ongoing basis. Dr. Barnette expressed concern that the inevitability of Appellant’s decompensation placed the children in harm’s way.
There was additional expert testimony that Appellant believes he is God’s son, that he sometimes signs his own name as “God” or “Lord,” and that he has experienced other bizarre contacts with God. The treating doctors uniformly opined that heavy use of marijuana further distorts the thinking process and inevitably leads to decompensation, which could occur anytime and endanger Appellant and others around him, including his children.
Appellant denied having a mental illness, and he admitted periodic noncom-plianee with his prescribed treatment schedule and medication for his mental condition. He understood the consequences of not taking his medications and admitted having faked compliance. He admitted intermittent heavy use of marijuana, the ingestion of which directly affects his disorder, makes him more susceptible to a manic episode, and amplifies the psychotic symptoms of his disorder.
Department, as well as the children’s mother, acknowledges there is no testimony that Appellant harmed his children in the past. In cases like this one, where the record discloses no prior act of neglect or abuse, the Florida Legislature apparently has concluded that the mere possibility of future abuse, neglect, or abandonment will not support a finding of dependency. Rather, where the slate is clean, Florida law requires a substantial risk of imminent abuse or imminent neglect to support a finding that a child is dependent. § 39.01(14)(f). Even so, in Richmond, 658 So.2d at 177-78, the Fifth District Court concluded that where a nexus is shown between the parent’s mental disorder and a significant risk of danger to the child(ren), the trial court is not required simply to wait idly until the abuse or neglect occurs before adjudicating dependency. Despite the absence of prior abuse or neglect in Richmond, the dependency order was affirmed because the mother’s severe mental-health problems would impact her judgment and ability to perform basic daily caretaking tasks. A nexus was shown between her bizarre, aberrant behavior and her inadequate caregiving skills, on the one hand, and her potential to abuse or neglect the child, on the other hand. Id.; Interest of T.D., 537 So.2d 173 (Fla. 1st DCA 1989); I.T., 532 So.2d at 1088-90. Noting the language in the statute, the Fifth District Court did not attempt to define how soon is “imminent.” Rather, the court has stated elsewhere:
The issue in prospective neglect or abuse cases is whether future behavior, which will adversely affect the child, can be clearly and certainly predicted.
Palmer v. Dep’t of Health & Rehabilitative Services, 547 So.2d 981, 984 (Fla. 5th DCA 1989); E.R. v. Dep’t of Children & Families, 773 So.2d 615 (Fla. 5th DCA 2000) (affirming dependency order where evidence of prospective neglect was that child *188 had witnessed his father abusing the child’s mother, and parents were more likely than not to resume their relationship in the future and, thus, resume their cycle of domestic violence in the child’s presence); Tolley v. Dep’t of Health & Rehabilitative Services, 667 So.2d 480 (Fla. 5th DCA 1996).
Citing Richmond, Department convincingly argues that the instant record amply demonstrates the required nexus between Appellant’s severe mental disorder and the clear, certain prospect of danger to the children if they are present and alone with Appellant when he has the inevitable next manic episode. “[I]n construing legislation, we must avoid any construction that would produce an unreasonable, absurd, or ridiculous consequence.” Interest of J.L.P., 416 So.2d 1250, 1252 (Fla. 4th DCA 1982). Surely, where the exact timing of the next manic episode cannot be predicted, but it. could happen very soon, the legislature did not intend for trial judges to wait helplessly until the next episode occurs and the children are neglected or abused. This seems especially true where Appellant’s treating psychiatrists and psychologists consistently noted his willful acts (heavy use of marijuana) and omissions (refusal to take his prescribed medication in the recommended dosages, refusal to comply with treatment schedules, and refusal to acknowledge his bipolar disorder) that make it far more likely that his inevitable future manic episodes will occur sooner, will last longer, and will be more intense. It’s a matter of when, not if, Appellant’s longer and more severe manic episodes will occur, and the expert witnesses opined that the next episode could occur very soon, to the detriment of the children if they are alone with Appellant. It is noteworthy that despite the trial court’s prior urging that Appellant avail himself of needed mental-health intervention through case management services and re-evaluation, the court found (at the conclusion of the final adjudicatory hearing) that Appellant had not taken advantage of those services. Interest of J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982) (child was properly committed to Department for adoption based on prospective neglect, where record demonstrated mother’s trainable state of retardation, yet her level of incompetence assured inadequate parenting skills, she exhibited a combative and antagonistic attitude, she resided in a mainly adult men’s ill-equipped rooming house rife with the odors of marijuana and urine, and she failed to demonstrate a purpose to make necessary changes for placement of the child in her residence). Given this compelling evidence, and the clear nexus between Appellant’s mental disorder and the inevitable prospect of another manic episode that will place the children in danger, we agree with the trial court’s conclusion that the evidence supports a finding of dependency.
The trial court withheld an adjudication of dependency but initially ordered out-of-home placement of the children, ie., “placement outside of the home of the parents or a parent.” § 39.01(49), Fla. Stat. (1999). Department concedes that this ruling cannot be reconciled with section 39.507(5), Florida Statutes (1999);[4] *189 K.S., 760 So.2d at 1068 (trial court failed to comply with § 39.507(5) when it withheld adjudication of dependency but ordered child to remain under protective supervision in out-of-home placement). As it appears that in a subsequent hearing, the trial court ordered the children to live with their mother under Department’s protective supervision, the issue of whether the ruling accords with section 39.507(5) could be moot. In any event, we agree with Department’s position, stated in its motion for clarification, “that an order of adjudication must be entered to comply with the facts and circumstances at the time of the adjudicatory hearing from which this appeal was taken.”
Accordingly, we AFFIRM the order finding dependency and REMAND WITH INSTRUCTIONS to the lower tribunal to enter an order adjudicating dependency in accordance with section 39.507(5).
ERVIN and MINER, JJ., concur.

. At a subsequent hearing, Department's counsel stated that the children's mother had complied with all of the provisions of her case plan except the parenting class, which was fully booked for reasons beyond her control. The trial court orally placed the children with their mother under protective services supervision of the appellee, Florida Department of Children & Families (Department), allowing Appellant to have unsupervised visitation in the presence of the paternal grandparents pursuant to a standard visitation schedule. However, the parties' appellate briefs suggest that the children still might be in out-of-home placement.

. The statutory definitions are as follows:
"Abuse” means any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired. Abuse of a child includes acts or omissions. Corporal discipline of a child by a parent or legal custodian for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child.
§ 39.01(2), Fla. Stat. (1999)
"Neglect” occurs when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child’s physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired. The foregoing circumstances shall not be considered neglect if caused primarily by financial inability unless actual services for relief have been offered to and rejected by such person. A parent or legal custodian legitimately practicing religious beliefs in accordance with a recognized church or religious organization who thereby does not provide specific medical treatment for a child shall not, for that reason alone, be considered a negligent parent or legal custodian; however, such an exception does not preclude a court from ordering the following services to be provided, when the health of the child so requires:
(a) Medical services from a licensed physician, dentist, optometrist, podiatric physician, or other qualified health care provider; or
(b) Treatment by a duly accredited practitioner who relies solely on spiritual means for healing in accordance with the tenets and practices of a well-recognized church or religious organization.
§ 39.01(46), Fla. Stat. (1999).

. The terms “prospective” and "imminent” are not defined in the statute. " '[Prospective’ simply means likely to happen,” Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565, 566 n. 1 (Fla.1991), or "expected.” American Heritage Dictionary of the English Language 1051 (1973). "Imminent” encompasses a narrower time frame and means "impending” and "about to occur.” Id. at 658. Thus, while all imminent abuse or neglect is prospective, prospective abuse or neglect is merely in the future, but not necessarily about to happen. In some instances, the terms appear to have been used interchangeably. E.B. v. Dep’t of Children & Family Services, 733 So.2d 1145 (Fla. 3d DCA 1999); M.F.G. v. Dep't of Children & Families, 723 So.2d 290 (Fla. 3d DCA 1999).

. This statutory subsection states:
If the court finds that the child named in the petition is dependent, but finds that no action other than supervision in the child's home is required, it may enter an order briefly stating the facts upon which its finding is based, but withholding an order of adjudication and placing the child's home under the supervision of the department. If the court later finds that the parents of the child have not complied with the conditions of supervision imposed, the court may, after *189 a hearing to establish the noncompliance, but without further evidence of the state of dependency, enter an order of adjudication and shall thereafter have full authority under this chapter to provide for the child as adjudicated. If the child is to remain in an out-of-home placement by order of the court, the court must adjudicate the child dependent,
(Emphasis added).