824 So.2d 1023 (2002)
In the Interest of J.L., a child.
J.L., Sr., Appellant,
v.
Department of Children and Family Services, Appellee.
No. 2D01-4793.
District Court of Appeal of Florida, Second District.
August 30, 2002.
Shea T. Moxon, Tampa, for Appellant.
Daryl Manning, Tampa, for Appellee.
COVINGTON, Judge.
The father, J.L., Sr., challenges an order that finds his minor child, J.L., dependent. The order withholds an adjudication of dependency but places the child under the supervision of the Department of Children and Family Services (the Department). The trial court determined that the father's health problems rendered him unable to provide for the child without assistance. The father contends that such was an improper basis for a finding of dependency. We agree and reverse.
The Department took J.L. into custody on October 19, 2000, the day he was born. In the dependency petition, the Department alleged, inter alia, that the mother tested positive for cocaine when J.L. was *1024 born and she had other children who had been removed from her custody. Since one of the options under consideration was to place the child with the father, a home study was conducted on December 6, 2000. That study resulted in a recommendation that J.L. be placed with the father, subject to the conditions that a coresident move out, that the mother not be allowed back into the home, and that the mother not be permitted any contact with the child, except through the Department. Eventually, the mother consented to a finding of dependency in light of the fact that she had a history of drug usage and that her incarceration would prevent her from caring for J.L. Thus, this appeal concerns only the finding of dependency as to the father.
The Department filed an amended petition for adjudication of dependency. The amended petition focused on the father's health problems, which included congestive heart failure, hypertension, hepatitis B, and diabetes. Because he suffers from diabetes, the father has to check his blood sugar level on a regular basis. A subsequent home study conducted on April 9, 2001, was positive, except for concerns raised regarding the father's health.
At the adjudicatory hearing on August 21, 2001, Dr. Jose Arias, who had been the father's treating physician, testified that the father's health was on a "roller coaster." According to Dr. Arias, whenever the father was discharged from the hospital, he would initially do well. However, Dr. Arias believed that at some point the father would start regaining weight and would stop taking his medication. This would result in the father's readmission to the hospital.
Dr. Arias concluded that if the father's weight continued to fluctuate, and if the father did not take his medication or test his blood sugar, he would have a fifty percent chance of death. Dr. Arias thus believed that the father would need supervision at home for his health conditions. The supervision would be tantamount to that received in a hospital in that the father's diet would be controlled and medication would be provided to him on schedule. Nevertheless, Dr. Arias agreed that people with the father's health issues can lead normal, active, and productive lives as long as their medication is under control.
On appeal, the father contends that the evidence presented at the adjudicatory hearing was insufficient to support the trial court's finding of J.L.'s dependency. He argues that his health problems do not pose the degree of risk necessary to support such a finding. We agree and need not reach the other issues raised by the father.
The Florida Supreme Court has stated that:
In a dependency proceeding, DCF must establish its allegations by "a preponderance of the evidence." A court's final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record. Competent substantial evidence is tantamount to legally sufficient evidence.
R.F. v. Fla. Dep't of Children & Families (In re M.F.), 770 So.2d 1189, 1192 (Fla. 2000) (footnotes omitted).
Generally, a dependent child is one who has been abandoned, abused, or neglected by his parents, or who is at substantial risk of imminent abuse, abandonment, or neglect by his parents. See § 39.01(14)(a), (f), Fla. Stat. (2001). The trial court did not find that the father had actually abused, abandoned, or neglected J.L. Rather, the basis of the trial court's order was that the father would be unable to *1025 care for the child without assistance. Thus, the trial court's conclusions were premised on a finding of prospective neglect.
While prospective neglect or abuse can be a basis for an adjudication of dependency, see T.D.Z. v. Dep't of Health & Rehabilitative Servs. (In re J.Z.), 636 So.2d 726, 727 (Fla. 2d DCA 1993), the Department must meet the statute's imminency requirement. As described in E.M.A. v. Department of Children & Families, 795 So.2d 183, 186 n. 3 (Fla. 1st DCA 2001):
The terms "prospective" and "imminent" are not defined in the statute. "`[P]rospective' simply means likely to happen," Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565, 566 n. 1 (Fla.1991), or "expected." American Heritage Dictionary of the English Language 1051 (1973). "Imminent" encompasses a narrower time frame and means "impending" and "about to occur." Id. at 658. Thus, while all imminent abuse or neglect is prospective, prospective abuse or neglect is merely in the future, but not necessarily about to happen.
The Department argues that because the father's medical conditions are serious and because he does not comply with his medication and treatment regimens, J.L. is at imminent risk of neglect. The Department also submits that J.L. is at risk of contracting hepatitis B from his father. While the trial court did not need evidence of actual neglect to find J.L. dependent, evidence sufficient to establish a nexus between the father's health issues and his potential to harm or neglect J.L. was required. Richmond v. Dep't of Health & Rehabilitative Servs., 658 So.2d 176, 177 (Fla. 5th DCA 1995). That connection is missing here. The father's failure to follow all directions as to his own health regimen does not necessarily mean that he will neglect J.L.'s needs. This is particularly true in view of the fact that there was no other evidence presented to indicate that the father had or would neglect J.L.'s needs. Further, any concerns about transmission of infectious diseases can be addressed by the provision of additional instruction to the father.
There are a number of cases where a child has been adjudicated dependent because of the parent's health situation. These cases, generally speaking, have involved psychological or emotional health impairments. Nevertheless, a review of the rationale applied in those circumstances is of value here. Courts, pursuant to section 39.01(14)(f), require that the prospect of neglect be imminent. For instance, in Richmond, the court concluded there was sufficient evidence to support a finding of prospective abuse or neglect. The mother kept a handgun because she believed that the CIA was following her. An officer found the loaded gun near where the child had been sitting. Id. at 177.
By contrast, I.T. v. State, Department of Health & Rehabilitative Services, 532 So.2d 1085 (Fla. 3d DCA 1988), reversed an adjudication of dependency that was based on prospective neglect. The child's parents were mentally ill. Experts agreed that excessive stress or anxiety might impair their judgment or their ability to solve problems. Id. at 1087. The Third District held that those facts did not amount to prospective neglect and noted, "There was no evidence that the parents' mental or emotional problems were likely to cause I.T. to be deprived of necessary food, clothing, shelter, or medical care." Id. at 1089.
Similarly, in In re T.D., 537 So.2d 173 (Fla. 1st DCA 1989), the First District reversed an order terminating a mother's parental rights based on theories of neglect or prospective neglect. The mother *1026 was mentally ill. The trial court had found that, as a result of the mother's mental illness, she "`lacked insight into the realities of raising the child.'" Id. at 175. It had also found that the mother neglected her child by failing to stimulate him intellectually. The court held that the mother's failure to stimulate the child was not an adequate reason to find that he was neglected. Id.
In the instant case, while there was evidence that the father neglected to properly treat his own medical conditions, there was no evidence that he had or would neglect the needs of his child. For that reason, we conclude there was no basis for a finding of dependency.
Based on the foregoing, we reverse the trial court's dependency order and remand for further proceedings consistent with this decision. The Department may offer its services to the father on a voluntary basis as opposed to the supervision mandated by the trial court's order.
Reversed and remanded.
CASANUEVA and SILBERMAN, JJ., Concur.