ROTHENBERG, Judge.
The father, J.C., appeals from an order adjudicating his children, D.C. and L.C., dependent. We affirm.[1]
In February 2005, the Florida Department of Children and Family Services (“Department”) took the children into custody, and thereafter filed a Dependency Petition (“Petition”) against the mother and father. The Petition alleges, in part, that the father neglected the children and/or was likely to neglect the children, and that the children were under imminent risk of harm, abuse, or neglect.
At the adjudicatory hearing, Detective Streeter of the North Miami Police Department testified as follows: On January 18, 2005, he conducted a surveillance of the father and mother’s home during the morning, afternoon, and evening, and that during this period, he observed numerous people drive up to the residence, proceed to a detached structure behind the main house, and participate in what appeared to be hand-to-hand drug transactions with the father. Based upon what he observed, Detective Streeter sent an informant to the residence on January 19, 20, and 21, 2005, and on each day, the informant purchased narcotics from the father. Thereafter, on January 31, 2005, a warrant was executed on the residence and marijuana, cocaine, and a firearm were seized. Detective Streeter, however, could not remember whether the narcotics were found in the main house or the detached structure, but was certain that the firearm was discovered hidden in a dresser, located in a bedroom in the main house.
The trial court entered an order adjudicating the children dependent as to the father, finding that “The Department has proven by a preponderance of the evidence that the [ ] children are under substantial risk of imminent threat of harm or abuse and neglect, within the meaning and intent *186 of chapter 39 Florida Statutes, which is likely to cause the children’s physical health to be significantly impaired,” and that the father has “neglected and/or is likely to neglect the children, ... thereby causing the children’s physical, mental and/or emotional health to be significantly impaired and/or the children to be at perspective [sic] risk of significant impairment....”[2] In doing so, the trial court found that the father sold drugs while the children were in his care, the children were exposed to drug related activities, and the father maintained an unsecured firearm while the children were in his care. The father appeals the trial court’s order.
The father contends that the trial court reversibly erred by adjudicating the children dependent. We disagree.
In a dependency proceeding, the allegations contained in the dependency petition must be established by a preponderance of the evidence. See M.F. v. Fla. Dep’t of Children & Families, 770 So.2d 1189, 1192 (Fla.2000). Moreover, a trial court’s determination of dependency is a mixed question of law and fact, which will be upheld on appeal if the trial court applied the correct law and its ruling is supported by competent substantial evidence. See Id.; A.B. v. Fla. Dep’t of Children & Family Servs., 901 So.2d 324, 326 (Fla. 3d DCA 2005).
In the instant case, the trial court applied the correct law, which includes the statutory definition of a dependent child, as provided in section 39.01(14), Florida Statutes (2004), the definition of neglect, as provided in section 39.01(45), Florida Statutes (2004), and the definition of abuse, as provided in section 39.01(2), Florida Statutes (2004). Section 39.01(14) provides, in part, as follows:
“Child who is found to be dependent” means a child who, pursuant to this chapter, is found by the court:
(a) To have been abandoned, abused, or neglected by the child’s parent or parents or legal custodians;
[[Image here]]
(f) To be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians.
Section 39.01(45), Florida Statutes (2004), defines neglect, in part, as follows:
“Neglect” occurs when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child’s physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.
(emphasis added). Section 39.01(2) defines abuse, in part, as follows:
“Abuse” means any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child’s physical, mental, or emotional health to be significantly impaired.
As the trial court applied the correct law, we must next determine whether its ruling, that the children are dependent based on neglect, and/or risk of imminent neglect and/or abuse, is supported by competent substantial evidence. In the instant case, there was absolutely no evidence that the children were deprived of necessary food, clothing, shelter, or medical treatment. The neglect and/or risk of imminent neglect that was alleged by the De *187 partment in the Petition, and which was ultimately found to exist by the trial court, was based on the environment that the children were permitted to live in. Specifically, the trial court found, and we agree, that the Department established by a preponderance of the evidence that the children lived in an environment where (1) the children’s father conducted numerous hand-to-hand drug transactions throughout the day, (2) the mother was aware of the drug transactions, but did nothing to protect the children, and (3) there was an unsecured firearm that was accessible to the children.
We also agree that the father’s actions in creating such an environment fall within the definition of abuse, as such an environment is likely to cause substantial impairment to the physical, mental and/or emotional health of these children.
Based upon the totality of the circumstances, we conclude that the trial court’s ruling finding the children dependent based on neglect, and/or risk of imminent neglect and/or abuse, is supported by competent substantial evidence. The evidence demonstrates that the father conducted numerous drug transactions on the property where the children lived. It is common knowledge that there is a potential for violence during drug transactions, especially when a firearm is accessible. While there is no evidence that the children were present or even aware that their father was selling drugs from the structure within the curtilage and directly behind their home, and no evidence of violence, based upon the ages of the children (ten and a half, and seven years of age), the proximity of the drugs, the number of transactions, the fact that the transactions occurred throughout the day and evening, and the presence of an unsecured firearm within the home, we conclude that there was sufficient evidence to support the trial court’s finding that the children’s physical and mental health were at substantial risk of imminent harm.
Affirmed.
COPE, C.J., concurs.

. D.C. was born on July 15, 1994, and L.C. was born on October 2, 1997, thus making them ten and a half years old and seven years old, respectively, at the time the events stated below occurred.

. The children were also adjudicated dependent as to the mother, who resides in the same residence, and her appeal is pending under Case No. 3D05-1779.