993 So.2d 1123 (2008)
M.C., Mother of D.C., B.D., and A.M., Children, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D08-696.
District Court of Appeal of Florida, Fifth District.
October 28, 2008.
*1124 Jeffery Deen, Regional Counsel, Office of the Criminal Conflict and Civil Regional Counsel, Altamonte Springs, and Mark A. Skipper, Office of the Criminal Conflict and Civil Regional Counsel, Fifth District, Orlando, for Appellant.
Kelly A. Swartz, Rockledge, for Appellee.
Krista M. Bartholomew, Guardian Ad Litem, Orlando.
COHEN, J.
M.C. appeals the order adjudicating her children dependent. We reverse because the Department of Children and Families ("Department") failed to present competent, substantial evidence establishing prospective neglect or abuse.
This case began when M.C. went to the Department seeking assistance with food, housing, and the general environment for her three children. Other than being hungry, the children appeared fine and there were no indications of any neglect or abuse.[1] While being interviewed by Ms. Elaam, a child protective investigator, M.C. stated that she was tired, could not sleep, and was hearing voices. When asked to elaborate further, M.C. explained the voices were not "telling her bad things" or to harm anyone, but were "like a T.V. that won't shut off." Ms. Elaam suggested M.C. obtain a psychiatric evaluation at Lakeside, but M.C. declined indicating that Lakeside previously evaluated her and prescribed her medications that did not work. Based primarily on these statements, a prior Baker Act proceeding, and acting strangely in general, the Department decided to shelter M.C.'s children and subsequently petitioned for dependency.
At the adjudication hearing, the Department admitted its decision to shelter the children was not based on any concern that M.C. had actually harmed her children. Rather, the Department wanted to "make sure she was ok." As Ms. Elaam testified, her main concern was for M.C. to get the help she needed to continue caring for her children.
The Department also presented testimony from a case worker who supervised M.C.'s visitation with her children after their removal. The case worker testified that M.C. regularly visited her children and was repeatedly offered services and referrals for a psychological evaluation. M.C. declined these offers, indicating that she did not have the money to pay the *1125 insurance co-pay associated with obtaining a psychological evaluation. Despite M.C.'s repeated reluctance or inability to get a psychological evaluation, the supervising case worker admitted that she did not appear to pose any threat of harm to her children.
Evidence of M.C. being Baker-Acted, just a month prior to the events culminating in the current dependency proceeding, was also presented. M.C. was briefly Baker-Acted after acting "weird" while seeking help at a church. The Department became involved when a child abuse report for inadequate supervision was filed. Ms. Barnes, a child protective investigator, interviewed M.C. at her home. The home was neat and clean. She observed the children, but did not find any issues that would negatively affect their health or safety. Despite M.C.'s refusal to follow up with the treatment center after she was released, the case was subsequently closed with no indicators of inadequate supervision.
M.C. testified that she went to the Department seeking assistance with food stamps and daycare. M.C. did not understand why, when she voluntarily sought help, the Department removed her children. She acknowledged previously being Baker-Acted and a prior diagnosis of depression with medication prescribed for treatment, but denied any inability to care for her children.
After receiving this evidence, the trial court concluded that M.C. had "some type of mental illness." Coupled with the strange behavior she exhibited when seeking the Department's assistance, the trial court found the children were at risk of being harmed if they were released to M.C. This finding of dependency could only be based upon a substantial risk of imminent abuse or neglect as provided for in section 39.01(14)(f), Florida Statutes (2007), because there was no evidence that M.C. abandoned, abused, or neglected her children.
Undoubtedly, the court does not need to wait for a child to be abused or neglected before acting. Richmond v. Dep't of Health & Rehab. Servs., 658 So.2d 176 (Fla. 5th DCA 1995). However, there must be a sufficient nexus between M.C.'s psychiatric disorder and the potential that she would substantially impair her children's physical, mental, or emotional health. Id. at 177. Even when viewed in the light most favorable to the Department, the evidence was insufficient to establish such a nexus.
In Richmond, a petition for dependency was filed based on the mother's "bizarre and aberrant" behavior. Id. at 177. However, unlike the case at bar, the trial court received evidence from a psychologist who opined that the mother's paranoia and delusions would negatively affect her ability to perform daily caretaking tasks, make good decisions for her or the child's safety, and perceive any needed medical treatment. Id. The trial court also received evidence that the mother did not properly feed or provide medical care for her child. Id.
In stark contrast, other than the evidence of M.C.'s strange behavior, the Department did not present any expert witness testimony or other evidence concerning the nature or extent of M.C.'s mental illness.[2] The only specifics about M.C.'s mental health came from her own testimony that she suffered from depression and had taken medication, but the trial court chose, as it was entitled, to reject this testimony. However, this left the trial court with no evidence concerning *1126 the existence, extent, or nature of any mental health problem.
Furthermore, no evidence was presented concerning the negative effects M.C.'s purported mental illness would have on her children's well-being. The Department instead only chose to offer its employees' unsubstantiated opinions that returning the children to M.C. could place them at risk. These opinions were undermined by all the evidence indicating that, despite her strange behavior, M.C. was adequately caring for her children.
The lack of evidence establishing the nature of M.C.'s mental disorder or its negative effects on her ability to protect and care for her children makes this case more analogous to M.N. v. Department of Children & Families, 826 So.2d 445 (Fla. 5th DCA 2002). In M.N. we reversed an order of dependency based on prospective neglect or abuse where the only evidence of the mother's mental condition was a psychologist's testimony that she had an adjustment disorder, that was neither serious nor disturbing, due to below average intelligence. Id. at 447. This court concluded that having below average intelligence which resulted in a non-serious adjustment disorder was not the type of "mental condition" that rendered the prospect of future abuse highly probable. Id. Even in M.N., the Department attempted to establish that the mother had a mental illness that would affect her ability to care for her children. Here, the Department did not, instead choosing to rely on speculation.
We recognize that the trial court was left in an unenviable position. M.C. had mental health issues, although the nature and extent of these issues was a matter of conjecture. The cautious course was to err on the side of protecting the children. However, the Department simply did not present sufficient evidence to sustain its burden.[3] Accordingly, we must reverse.
REVERSED.
MONACO, J., concurs.
EVANDER, J, concurs specially, with opinion.
EVANDER, J., concurring specially.
I write only to emphasize that expert testimony is not necessarily required to support a finding that a caregiver's mental condition places a child "at substantial risk of imminent abuse, abandonment, or neglect." § 39.01(14)(f), Fla. Stat. (2007). However, in this case, the lay witness testimony presented by the Department was simply insufficient to meet its burden of proof.
NOTES
[1] The children indicated they had eaten at their grandmother's house earlier that day.
[2] The records from Lakeside were obtained post-disposition.
[3] The Department may have been able to meet its burden had it moved the trial court to order M.C. to submit to a psychological evaluation as provided for in section 39.407(15), Florida Statutes (2007).