# Third District Court of Appeal

## State of Florida

Opinion filed May 30, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-291
Lower Tribunal No. 17-15364
_____

**C.H., the mother,**
Appellant,

vs.

**Department of Children and Families,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jason E. Dimitris, Judge.

Thomas Butler, P.A., and Thomas J. Butler, for appellant.

Karla Perkins, for appellee.

Before ROTHENBERG, C.J., and SALTER and LINDSEY, JJ.

ROTHENBERG, C.J.

The mother, C.H., appeals the trial court's order adjudicating her minor child, L.W., dependent. Because the trial court's determination that L.W. was at substantial risk of imminent harm is not supported by competent substantial evidence, we reverse the order adjudicating L.W. dependent as to the mother.[1]

In late May 2017, the Department of Children and Families ("DCF") initiated an abuse investigation after a weapon was discharged in L.W.'s presence. Following the investigation, in June 2017, DCF filed a verified petition for dependency, alleging, in part, as follows: (1) the mother abandoned L.W., as defined in section 39.01(1); and (2) L.W. is "at a substantial risk of imminent abuse, abandonment, or neglect" based, in part, on the mother's alleged use of illegal drugs and the mother leaving L.W. with an inappropriate caregiver—the mother's sister ("maternal aunt").

At the adjudicatory hearing, DCF called its Child Protective Investigator ("CPI"); L.W.'s maternal grandmother, who was granted temporary custody of L.W. following a shelter hearing; and the mother. The testimony at the adjudicatory hearing reflects that the mother lived with the maternal grandmother during her pregnancy, and following L.W.'s birth in February 2016, the mother continued to live at the maternal grandmother's home with L.W. until December

---

[1] The verified petition for dependency sought to adjudicate L.W. dependent as to both the mother and L.W.'s father, J.C.W. L.W. was adjudicated dependent as to the father pursuant to the father's consent plea. The adjudication of dependency as to the father is not at issue in this appeal.

2016, when the mother and L.W. moved out. While living at the maternal grandmother's home, the mother actively cared for L.W. and bought him necessities.

Sometime in March 2017, the mother gave the maternal aunt physical custody of L.W. because she was unable to care for L.W. The mother decided to leave L.W. with the maternal aunt because the maternal grandmother worked full-time whereas the maternal aunt was not working. Prior to the mother leaving L.W. with the maternal aunt, the mother knew that the maternal aunt had a prior case with DCF, which was closed following the maternal aunt's successful completion of her case plan and the return of the child to the maternal aunt. Despite knowing that the maternal aunt had a history with DCF, the mother did not inquire into any specific facts relating to the closed case.

In late May 2017, DCF became involved with L.W. following an abuse report against the maternal aunt. The abuse report was based on a gun being discharged in the presence of L.W. and the maternal aunt's daughter. When the CPI became involved, L.W. and the maternal aunt's daughter were clean, had no bruises or marks, appeared to be well-fed, and were appropriately clothed.

At the conclusion of DCF's case, the trial court found that DCF had failed to establish by a preponderance of the evidence that the mother had abandoned L.W. or was using illegal drugs. The trial court, however, adjudicated L.W. dependent

3

as to the mother based on its finding that L.W. was at substantial risk of imminent harm because the mother had left L.W. in the custody of an inappropriate caregiver—the maternal aunt. Specifically, the trial court's order provides that the fact that a gun was discharged in L.W.'s presence "proves" that the mother's placement of L.W. with the maternal aunt was inappropriate. The trial court's order also states:

> The Mother was aware of the maternal aunt's own child's removal, yet never sought to inquire why that removal occurred. This leaves the Court to conclude that the Mother is willing to leave the Child anywhere without questioning the environment so that she could go out and do something else. The Court finds that these actions have placed the Child at risk of harm.

The mother's appeal followed.

A child is considered dependent if the trial court finds the child, among other things, is at "substantial risk of imminent abuse . . . by the parent . . . ." § 39.01(15)(f), Fla. Stat. (2017). In section 39.01(2), Florida Statutes (2017), "abuse" is defined as "any willful act or threatened act that results in any physical, mental, or sexual abuse, injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired. Abuse of a child includes acts or omissions."

"[I]n a dependency proceeding, the allegations contained in the dependency petition must be established by a preponderance of the evidence." D.A. v. Dep't of Children & Family Servs., 84 So. 3d 1136, 1138 (Fla. 3d DCA 2012). "A court's

4

final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record. Competent substantial evidence is tantamount to legally sufficient evidence." In re M.F., 770 So. 2d 1189, 1192 (Fla. 2000) (footnote omitted); J.C. v. Fla. Dep't of Children & Family Servs., 937 So. 2d 184, 186 (Fla. 3d DCA 2006).

Although DCF advanced several theories in its attempt to adjudicate L.W. dependent, the trial court ultimately found that L.W. was dependent because he was at substantial risk of imminent harm based solely on the mother leaving him with an inappropriate caregiver—the maternal aunt. See § 39.01(15)(f), Fla. Stat. (2017). The trial court determined that the maternal aunt was an inappropriate caregiver because she had a prior history with DCF. The trial court also questioned the mother's decision to leave L.W. in the maternal aunt's custody without first questioning her as to the specifics of the closed DCF case. Finally, the trial court found that the fact that a gun was discharged in L.W.'s presence "proves" that the mother left L.W. with an inappropriate caregiver. In essence, the trial court found that (1) a caregiver who has a prior history with DCF, despite its successful resolution, is an inadequate caregiver, and (2) if a gun is discharged in the presence of a child, it "proves" that the child is being cared for by an inappropriate caregiver.

First, a caregiver, such as the maternal aunt, is not necessarily rendered inappropriate based solely on the fact that she has a prior history with DCF. After all, DCF deemed the maternal aunt to be an adequate caregiver following her completion of her case plan. If DCF had not, we cannot imagine that it would have permitted the maternal aunt to regain custody of her own child. Although it may have been prudent for the mother to inquire as to the facts leading to DCF's initial involvement with the maternal aunt, this alone does not indicate that the mother, as the trial court determined, was "willing to leave [L.W.] anywhere without questioning the environment." Prior to leaving L.W. with the maternal aunt, the mother knew that the maternal aunt had regained custody of her own child following the successful completion of her case plan. Moreover, during the almost three months that the maternal aunt had custody of L.W., the mother would stay at the maternal aunt's home or visit L.W., which allowed her to gauge whether L.W. was being properly cared for. In fact, when DCF took custody of L.W. following the discharging of the gun, it is undisputed that L.W. and the maternal aunt's daughter were clean, being well-fed, appropriately dressed, and had no marks or bruises.

Second, the fact that a gun was discharged in L.W.'s presence does not by itself establish that the maternal aunt was an inappropriate caregiver. The testimony at the adjudicatory hearing reflects that the gun was discharged by

6

someone other than the maternal aunt, and the testimony does not shed light as to the facts leading to the discharging of the gun. Although there clearly may be situations where the discharging of a gun in the presence of a child may properly lead to a finding that a child was left with an inappropriate caregiver, thereby placing the child at substantial risk of imminent harm, there were no additional facts brought out during the adjudicatory hearing that would support such a finding.

We additionally note that the CPI testified during cross-examination that following his investigation, he drafted his investigative summary. The investigative summary reflects that he determined that the mother had no prior involvement with DCF, there were no indicators for substance abuse, and the claim that the mother subjected L.W. to inadequate supervision was not substantiated.

Based on the evidence presented at the adjudicatory hearing, we conclude the trial court's ruling that L.W. was at substantial risk of imminent harm was not supported by competent substantial evidence. Accordingly, we reverse the order under review adjudicating L.W. dependent as to the mother.

Reversed.